UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x

BELARUSSIAN SHIPPING CO., :

Plaintiff, : EFC CASE

-against- : 07 Civ. 3152 (GEL)

WAJILAM EXPORTS SINGAPORE PRIVATE LIMITED a/k/a WAJILAM EXPORTS PTE. LTD., :

Defendant. :

-----------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RELEASE FO FUNDS, AMENDMENT OF ORDER AND AWARD FOR ATTORNEYS FEES**

CARDILLO & CORBETT
Attorneys for BNP Paribas of Singapore
29 Broadway
New York, New York 10006
Tel: 212-344-0464

FRANCIS H. McNAMARA
of Counsel

## TABLE OF AUTHORITIES

**Cases:**


All Service Exportacao v. Banco Bamerindus, 921 F.2d 32 (2nd Cir. 1990)................................. 5

Allied Marine Services Ltd. v. LMJ International Ltd., 06 Civ. 3641 ......................................... 6

Daikan Love S.A. v. Al-Haddad Bros. Enterprises, 384 F. Supp. 782 (S.D.N.Y. 1984)......................................................................................................... 6

Dolco Investment, Ltd. v. Moonriver Development Ltd., et al., 2007 WL 4320751 (S.D.N.Y., Dec. 2007)........................................................................................ 8

Dow Chemical Pac., Ltd. v. Rascator Mar. S.A., 782 F.2nd 329 (2nd Cir. 1986).......................... 8,9

First Commercial Bank v. Gotham Originals Inc., 64 N.Y.2d 287 (1985) ................................ 4,5

Ingersoll Mill. Mach. Co. v M/V BODENA, 829 F.2d 293 (2nd Cir. 1987)................................. 7

Prestigious Shipping v. Agrocorp International, 07 Civ. 7101 ..................................................... 6

Prime Shipping Co. Ltd. v. Wajilam Export(s) Pte. Ltd., No. 06 Civ. 1183 (JSR), 2006 WL 1539330 (S.D.N.Y., June 2006)................................................................. 3,5,6

Sierra Club v. United States Army Corps of Engineers, 776 F.2d 383 (2nd Cir. 1985)................ 8,9

Stevedoring Serv. of America v. Ancora Transp., N.V., 59 F.3d 879 (9th Cir. 1995).................. 4

Supreme Mechandise Co. v. Chemical Bank, 70 N.Y.2d 344 (1987)...................................... 4,5,6

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................ 1

FACTS ........................................ 2

ARGUMENT ........................................ 3

POINT I

THE FUNDS ATTACHED BELONG TO BNP, AND NOT TO DEFENDANT, CONSEQUENTLY THE FUNDS MUST BE RELEASED ........................................ 3

POINT II

THE ORDER SHOULD BE AMENDED TO PREVENT FURTHER MISTAKEN ATTACHMENTS OF BNP'S FUNDS ........................................ 6

POINT III

LEGAL FEES AND EXPENSES SHOULD BE AWARDED TO BNP ........................................ 7

CONCLUSION ........................................ 10

**PRELIMINARY STATEMENT**

Claimant, BNP Paribas of Singapore ("BNP"), submits this Memorandum of Law in Support of its Motion to Vacate six maritime attachments totaling $410,593.56, obtained by Plaintiff, Belarussian Shipping Co. ("Plaintiff"), pursuant to Rules E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (hereafter " Rule E (4) (f)"), and for other, related, relief.

Pursuant to an Ex Parte Attachment Order dated April 19, 2007 ("the Order"), which authorized the attachment of the property of Defendant Wajilam Exports Singapore Pte. Ltd.' ("the Defendant") in an amount up to $1,649,265.40, garnishee Wachovia Bank ("Wachovia") mistakenly restrained, and Plaintiff has wrongfully refused to release, six electronic funds transfers ("EFTs") in the amounts of $163,644.14, $62,381.87, $78,665.02, $48,995.16, $20,454.95, and $36,462.24 (hereinafter "the Funds"), which are exclusively the property of BNP. Specifically, the Funds are the proceeds of six letters of credit, which were sent by several banks as payment to BNP, as the negotiating bank with respect to the letters of credit. Accordingly, this Court should order the release of the Funds to BNP, because the Defendant has no property interest whatsoever in them.

BNP also requests the Court to appropriately amend the Order as proposed in paragraph 17 of the declaration of Francis H. McNamara dated January 14, 2007 ("McNamara Dec."), to prevent numerous repetitions of the mistaken stoppages by garnishee banks of EFTs belonging exclusively to BNP.

Further, in view of the facts stated in McNamara Dec. ¶¶ 18-21, BNP submits that the attachment of the Funds has been maintained in bad faith by the Plaintiff. Consequently, the

reasonable attorneys' fees and costs of BNP occasioned by the within motion, and the interest lost by BNP on the Funds, should be granted to BNP.

**FACTS**

The Defendant is in the business of selling and shipping logs to buyers in several countries. The sale contracts typically require the buyers to pay the Defendant through a bank letter of credit ("the Credit") several months after the documents required for payment under the Credit ("the Credit Documents") have been presented to and accepted by the bank which issued the Credit ("the Issuing Bank"). However, the Defendant can obtain prompt payment by dealing with a local bank, which will purchase the Credit Documents at a discount from the Defendant. Thereafter, the local bank will present the Credit Documents to the Issuing Bank with instructions for payment to its account. After acceptance of the Credit Documents and the payment instructions, the Issuing Bank will pay the local bank on the date stated in the Credit.

The Defendant negotiated the Credit Documents to BNP in the above manner, and the Issuing Banks accepted the Credit Documents and the payment instructions, for all six of the payments which constitute the Funds. See ¶¶ 3-7 and Exhibits 1-6 of the declaration of Alvin Ong dated January 11, 2008 ("Ong Dec.") Accordingly, the payments belonged exclusively to BNP and the Defendant has no interest in them. However, when the six related EFTs were transmitted by the Issuing Banks, Wachovia mistakenly stopped them pursuant to the Order because the Defendant's name was referred to in the EFTs. (Ong Dec. ¶ 8)

Shortly after learning of the attachments, the undersigned attorneys for BNP sent to the attorneys for Plaintiff copies of transaction documents and copies of three of the EFTs, all plainly showing that the Funds were the exclusive property of BNP. (McNamara Dec. ¶ 20) Regrettably, and surprisingly, the Plaintiff refused to consent to release of the Funds.

We say "surprisingly", because only a short time before this rebuff three other payments, of precisely the same nature as the ones now in issue, had been mistakenly stopped at Wachovia pursuant to the Order. In those instances, transaction documents (as well as a copy of this Court's decision in *Prime Shipping Co. Ltd. v. Wajilam Export(s) Pte. Ltd.,* No. 06 Civ. 1183 (JSR), 2006 WL 1539330 (S.D.N.Y., June 2006)) were also sent to the Plaintiff's attorneys, who then instructed Wachovia to release the attached EFTs. (McNamara Dec. ¶¶ 18 & 19)

BNP has done additional Credit negotiations with Defendant, and therefore expects that intermediary banks in New York will continue to mistakenly stop the related EFTs which are the property of BNP, unless the Order is appropriately amended. (Ong Dec. ¶¶ 11-12)

## ARGUMENT

### POINT I

### THE FUNDS ATTACHED BELONG TO BNP, AND NOT TO DEFENDANT, CONSEQUENTLY THE FUNDS MUST BE RELEASED

As a person claiming an interest in the Funds restrained by maritime attachment, Rule E(4)(f) governs BNP's motion. It provides, in relevant part, as follows:

> *Procedure for Release from Arrest or Attachment.* Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

Thus, Plaintiff bears the burden of showing why the attachment of BNP's property should not be vacated.

Under Supplemental Rule B(1) and this Court's Order only the property of Defendant can be attached. See Rule B(1) (a) ( "If a defendant is not found within the district ...

a verified complaint may contain a prayer for process to attach **the defendant's.... property** ...in the hands of garnishees") [emphasis added]. Therefore, it is axiomatic that if the property attached is not the Defendant's, the attachment must be vacated. See *Stevedoring Serv. Of America v. Ancora Transp.*, 59 F.3d 879, 883 (9th Cir. 1995) ("There was no error in the court's determination that it did not have jurisdiction over the funds under Rule B because Ancora, the actual defendant, did not own them. We thus affirm the district court's release of the garnished funds.").

The facts here leave no doubt that the Funds are solely the property of BNP. BNP gave full value to the Defendant for the Credit Documents, presented them to the Issuing Banks, and obtained acceptance from the latter with respect to both the Credit Documents and the instructions that payment be made to BNP. At that that point, if not earlier, the Defendant had parted with 100% of its interest in the Funds and the transaction became entirely "bank to bank" under the Credits, i.e., wholly independent of the Defendant.

This inescapable conclusion was confirmed by the New York Court of Appeals in *First Commercial Bank v. Gotham Originals Inc*, 64 N.Y.2d 287 (1985) and *Supreme Mechandise Co. v. Chemical Bank*, 70 N.Y.2d 344 (1987). In *First Commercial* the New York Court of Appeals stated, at page 296:

> By purchasing the signed drafts drawn under the letter of credit by the transferee-beneficiary, R. Bore, [FCB] became a negotiating bank and because of Bank Leumi's express engagement in the letter of credit to honor drafts presented by a negotiating bank, petitioner [FCB] acquired rights against Bank Leumi, as issuer, "to the same extent as if it were named as beneficiary of the credit."(citations omitted) (emphasis added)

Similarly, in *Supreme Merchandise* the Court followed its earlier holding in *First Commercial Bank*, that once the issuer accepts drafts submitted by a negotiating bank, there are no letter of credit proceeds belonging to the defendant to be attached, such proceeds being the property of the negotiating bank. The Court held at page 348 as follows:

> As to the second order of attachment, we agree with the court below that the issue has already been decisively determined against petitioner. In *First Commercial Bank v. Gotham Originals* (64 NY2d 287), we recognized that an issuing bank's obligation to pay in a commercial letter of credit transaction is fixed upon presentation of drafts and the documents specified in the letter of credit. Once the issuer accepts the drafts it becomes "directly, primarily and unconditionally obligated to the holder" and any order subsequently served on the issuer seeking to enjoin payment is too late (*id.*, at 297). Here Chemical accepted the drafts under the credit, and the negotiating banks held the acceptances, before service of the second order of attachment. There having been nothing to attach at the time of service of the attachment order (CPLR 6214 [b]), Chemical plainly did not violate that order when it made payment to the negotiating banks rather than directing the funds to the Sheriff (emphasis added)

In *All Service Exportacao v. Banco Bamerindus,* 921 F.2d 32 (2nd Cir. 1990), a buyer alleging fraud by the seller in the contract of sale sought to enjoin the issuing bank, which had accepted documents and a draft from a negotiating bank, from paying the letter of credit funds to the negotiating bank. Before dealing with the fraud aspect (which it found insufficient as it pertained to the sale contract, not to the letter of credit itself), the Court reaffirmed the principle of law applicable here: "The [issuing] bank's obligation to pay the [negotiating bank] is fixed upon presentation of documents specified in the credit and upon acceptance of the draft." (p. 35).

*Prime Shipping Co., Ltd. v. Wajilam Exports (s) Pte. Ltd.,* No. 06

Civ. 1183 (JSR), 2006 WL 1539330 (S.D.N.Y. June, 2006), a case involving a Rule B attachment, is on all fours with the instant case. There, the plaintiff argued that the intercepted payment by the issuing bank to BNP was "either a payment by [the buyer] to Wajilam, or Wajilam's debt to BNP, or both". *Prime Shipping* *1. Judge Rakoff disposed of these arguments as follows:

> ... plaintiff's position cannot be sustained, since payment under the letter of credit must be considered wholly apart from the underlying debt owed to Wajilam by the buyer of the logs, and, similarly, from any contractual relationship between BNP, the negotiating bank, and Wajilam, its customer. The proceeds therefore cannot be considered a debt owed to Wajilam by any party, whether the buyer or the negotiating bank. Indeed, [the issuing bank] became "directly, primarily and unconditionally obligated" to pay BNP at the moment it accepted the conforming documents presented by BNP, *Id.* at 1260; see also *Supreme Merchandise Co. v. Chemical Bank,* 514 N.E.2d 1358, 1359-60 (N.Y. 1987), and, accordingly, BNP, not Wajilam, was the proper beneficiary of the letter of credit's proceeds. *2

In an unreported bench decision in *Prestigious Shipping v. Agrocorp International,* 07 Civ. 7101 (CM), this Court approvingly cited *Prime Shipping*, and in *Allied Marine Services Ltd. v. LMJ International Ltd.,* 06 Civ. 3641 (LAK) (THK), Magistrate Judge Katz, citing *Prime Shipping,* recommended that an attachment of a credit negotiation payment be vacated on the ground that it was not the defendant's property.

In view of the foregoing, the Funds should be released forthwith to BNP.

**POINT II**

**THE ORDER SHOULD BE AMENDED TO PREVENT FURTHER MISTAKEN ATTACHMENTS OF BNP'S FUNDS**

The foregoing cases reflect the very strong policy against judicial interference in bank to bank letter of credit transactions. See also and *Daikan Love S.A. v. Al-Haddad Bros.*

*Enterprises,* 384 F. Supp. 782, 785-786 (S.D.N.Y. 1984). In this case, daily service of the Order, which does not discriminate sufficiently between the property of the Defendant and the property of negotiating banks, is contravening that policy.

The reasons for this are described in detail in McNamara Dec. ¶¶ 5-16. Briefly, upon service of the Order the garnishee banks enter the Defendant's name in software which "looks" for that name in all ETFs. When the software "sees" the name it stops the ETF, without regard to whether the Defendant is the originator or beneficiary of the funds or whether the name is present merely for reference purposes. Thereafter, the garnishee banks leave arguments about whether or not the funds are the property of the Defendant to the parties and the Court. In this way, many ETFs which are the property of negotiating banks with which the Defendant has dealt have been, and will continue to be, stopped by mistake.

Fortunately, this mistake is easily avoidable. As explained in the McNamara Dec. ¶¶ 17, if the Order is amended to provide that the process of maritime attachment and garnishment ("PMAG") shall not be effective with respect to EFTs in CHIPS type B and SWIFT type 202 formats, which pertain solely to transfer where a bank is the beneficiary of the funds, all should be well. Either the CHIPS type B and the SWIFT type 202 EFTs will not be stopped, or, if they are, the garnishee banks will, we assume, release the EFTs upon seeing that they are excluded from the reach of the Order and PMAG.

## POINT III

## LEGAL FEES AND EXPENSES <u>SHOULD BE AWARDED TO BNP</u>

A district court has the discretion to award attorneys fees and expenses to the prevailing party upon a finding that the losing party acted in bad faith. *Ingersoll Mill. Mach.*

*Co. v M/V BODENA,* 829 F.2d 293, 309 (2nd Cir. 1987). To establish bad faith the applicant must show both that the legal basis of the conduct complained of was patently without merit and that the conduct was engaged in for an improper purpose, such as harassment of the prevailing party. *Dow Chemical Pac., Ltd. v. Rascator Mar. S.A.,* 782 F.2nd 329 (2nd Cir. 1986); *Sierra Club v. United States Army Corps of Engineers,* 776 F.2d 383 (2nd Cir. 1985); *Dolco Investment, Ltd. v. Moonriver Development Ltd., et al.,* 2007 WL 4320751 (S.D.N.Y., Dec. 2007).

Both tests are met in this case. When the first three attachments of ETFs were made, the Plaintiff was given copies of transaction documents showing that the funds were the property of BNP (in two cases) and the property of another bank in Singapore in the third case, in consequence of prior negotiations of letters of credit. After reviewing the documents the Plaintiff properly instructed the garnishee banks to release the funds. (McNamara Dec. ¶ 18)

However, when three further ETF attachments occurred at Wachovia, which were identical in character to the three released attachments, the Plaintiff announced that it would not release the funds, despite the fact that the Plaintiff had been given both the letter of credit negotiation documents and copies of the wire transfers showing that BNP was the beneficiary of the funds. These attachments were followed by three others which, together, constitute the Funds. (McNamara Dec. ¶ 20)

It is beyond dispute that the law governing the ownership of funds being sent by an issuing bank to a negotiating bank is clear and well settled, hence the Plaintiff had no legal basis whatsoever for refusing to release the Funds, once it had seen the transaction documents. In short, the Plaintiff's refusal to release the Funds was and is "entirely without color", *Sierra Club,* 390. Therefore, the first prong of the test for the award of legal costs is met.

The second prong, improper purpose, is conceptually more difficult. A district court may not *assume* that a frivolous legal position was maintained for an improper purpose. *Sierra Club,* 391. Rather, the court must make specific findings that a party's conduct, based solely on a frivolous position, was, in fact, improperly oppressive to the other party. *Dow Chemical Pac., Ltd.,* 344-345.

In this case the Plaintiff's refusal to release the Funds is obviously improperly oppressive to BNP, because BNP has thereby been unreasonably forced to incur the expense of the instant motion to establish what the Plaintiff itself had earlier acknowledged—that the proceeds of previously negotiated letters of credit are the property of BNP.

Moreover, the Plaintiff's refusal to release the Funds amounts to an improper use of the Order. The Order pertains only to the Defendant's property. Once the Plaintiff was in possession of facts showing that the Funds belonged to another, the Plaintiff had a duty to promptly release the Funds.

## CONCLUSION

For the foregoing reasons, the Court should order that the Funds be released, and that the Order be amended so that no property of BNP will be attached in the future, and that legal costs and expenses be granted to BNP.

Dated: January 15, 2008

Respectfully submitted,

Cardillo & Corbett
Attorneys for BNP Paribas Singapore
29 Broadway
New York, New York 10006
212-344-0464
212-797-1212 (fax)
cc@cardillocorbett.com
fmcnamara@cardillocorbett.com

By: ______________________
Francis H. McNamara