UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
BELARUSSIAN SHIPPING CO.,                       :
                                                :          07 CV 3152 (GEL)
                         Plaintiff,             :          ECF CASE
                                                :
            - against -                         :
                                                :
WAJILAM EXPORTS (SINGAPORE)                      :
PRIVATE LIMITED a.k.a. WAJILAM                   :
EXPORTS PTE. LTD.,                               :
                                                :
                    Defendant.                  :
------------------------------------------------------X


# PLAINTIFF BELARUSSIAN SHIPPING CO.'S
# MEMORANDUM OF LAW IN OPPOSITION TO
# MOTION TO VACATE MARITIME ATTACHMENT


TISDALE LAW OFFICES, LLC
11 West 42nd Street, Suite 900
New York, NY 10036
(212) 254-0025 - Phone
(212) 869-0067 - Fax


*Attorneys for the Plaintiff,*
Thomas L. Tisdale, Esq.
Lauren C. Davies, Esq.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ii-iv

PRELIMINARY STATEMENT................................................................................1

FACTS ...................................................................................................................2

ARGUMENT.........................................................................................................2

POINT I
BURDEN OF PROOF .........................................................................................2

POINT II
WAJILAM HAS A COGNIZABLE PROPERTY INTEREST
IN THE FUNDS ATTACHED ............................................................................3

  A. Under Federal Maritime Law, Wajilam has a
     Property Interest in the Attached Funds...............................................3

  B. New York State Law is Inapplicable.................................................10

  C. Even under New York State Law, Wajilam has a
     Property Interest in the Funds Attached .............................................11

POINT III
AT ALL TIMES, BSC ACTED IN GOOD FAITH AND, AS SUCH,
THE AWARD OF ATTORNEYS FEES AND EXPENSES IS INAPPROPRIATE............15

CONCLUSION....................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*ABCKO Ind. v. Apple Films, Inc.*
39 N.Y.2d 670 (1976) ..........................................................................................13,14

*Aifos Trade SA v. Midgulf International Ltd.*
06 Civ. 203 (SHS)(May 2, 2006 Order)...............................................................9

*Allied Marine Services Ltd. v. LMJ International Ltd.,*
06 Civ. 3641, October 23, 2007 ..........................................................................10

*Aqua Stoli v. Gardner Smith Pty Ltd.,*
460 F.3d 434, 445 (2d Cir. 2006)........................................................................3,9

*Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.,*
85 F.3d 44, 47 (2d Cir. 1996)..............................................................................11

*Digitrex, Inc. v. J. Howard Johnson*
491 F.Supp. 66 (S.D.N.Y. 1980).........................................................................14

*Dolco Investment, Ltd. v. Moonriver Development Ltd., et al.,*
2007 WL 4320751 (SDNY Dec. 2007) ...............................................................16

*Dow Chemical Pac., Ltd. v. Rascator Mar. S.A.,*
782 F.2d 329 (2d Cir. 1986).................................................................................16

*First Commercial Bank v. Gotham Originals, Inc.*
64 N.Y.2d 287 (1985) ..........................................................................................15

*Greenwich Marine v. S.S. Alexandra,*
339 F.2d 901 (2d Cir. 1965).................................................................................4

*HBC Hamburg Bulk Carriers GmbH & Co. KG v.*
*Proteinas Y Oleicos S.A. de C.V.*
2005 U.S. Dist. LEXIS 8009 (S.D.N.Y. 2005) ...................................................4,7,8,9

*In re Bd. Of Dir. Of Hopewell Int'l. Ins. Ltd.*
238 B.R. 25 (Bankr. S.D.N.Y. 1999) ...................................................................13

*Iran Express Lines v. Sumatrop, A.G.,*
563 F.2d 648 (4th Cir. 1977) ............................................................................16

*Kates v. Marine Midland Bank, N.A.*
143 Misc.2d 721 (Sup. Ct. Monroe Co. 1989).........................................................................14

*Niagara Mohawk Power Corp. v. Young*
135 A.D.2d 1139 (N.Y. App. Div. 1987) .................................................................................14

*Noble Shipping, Inc. v. Euro-Maritime Chartering, Ltd.*
2003 U.S. Dist. LEXIS 23008 (S.D.N.Y. 2003) ...................................................................7,8,12

*Prime Shipping v. Wajilam Exports (S) Pte. Ltd.,*
No. 06 CV 1183 (JSR).............................................................................................................8,9

*Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottacchi S.A. de Navegacion,*
732 F.2d 1543, 1549 (11th Cir. 1984) ....................................................................................11

*Sierra Club v. United States Army Corps of Engineers,*
776 F.2d 383 (2d Cir. 1985)....................................................................................................16

*Streever v. Mazzone*
97 Misc.2d 465(Sup. Ct. Saratoga Co. 1978() ......................................................................14

*Supreme Merchandise Co. v. Chemical Bank*
117 A.D.2d 424 (N.Y. App. Div. 1986) ..............................................................................14,15

*Trojan Hardware Co. v. Bonacquisti Constr. Corp.*
141 A.D.2d 278 (N.Y. App. Div. 1998) ..................................................................................14

*Winter Storm Shipping, Ltd. v. TPI*
310 F.3d 263 (2d Cir. 2002).............................................................................................3,5,8,9,11
...........................................................................................................................................12,14,16

## Statutes & other authorities

Grant Gilmore & Charles L. Black, Jr., The Law of Admiralty,
§ 1-12, at 36 (2d ed. 1975).......................................................................................................11

Jarvis, An Introduction to Maritime Attachment Practice Under Rule B
J. Mar. L. & Com. 521 (Oct. 1989)........................................................................................8,12

McKinney's Cons. Laws of N.Y., Book 7B..........................................................................12,14

Moore's Federal Practice- Civil § 705.04...............................................................................16

N.Y. Civ. Prac. L&R. § 6202...................................................................................................12

N.Y. Civ. Prac. L&R. § 5201 ............................................................................................12,13,14,15

Siegel, *New York Practice* § 489 (3d. ed. 1999) .................................................................13,14

## **PRELIMINARY STATEMENT**

Plaintiff, BELARUSSIAN SHIPPING COMPANY ("BSC" or "Plaintiff"), by and through its attorneys, Tisdale Law Offices, LLC, submits the within Memorandum of Law in opposition to the Motion to Vacate Maritime Attachment filed by "claimant" BNP Paribas of Singapore ("BNP").

Pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, Fed. R. Civ. P. Adm., Supp. B ("Supplemental Admiralty Rule B" or "Rule B") and the Court's April 19, 2007 Ex Parte Order, the Clerk issued Process of Maritime Attachment and Garnishment (hereinafter "PMAG") authorizing attachment of Wajilam Exports Singapore Pte. Ltd.'s ("Wajilam") property within the district, including but not limited to any property held by Wachovia Bank ("Wachovia"), as garnishee. Between August 3, 2007 and October 23, 2007, Wachovia attached six electronic funds transfers ("EFTs") totaling $410,591.08 (hereinafter "the Funds"), pursuant to the aforementioned Ex Parte Order.

The issues raised by BNP in this motion were first raised by this same counsel immediately after the Ex Parte Order was issued, but the issues were then being raised on behalf of Wajilam. Essentially, Wajilam (and now BNP) alleges that the funds attached were the proceeds of a Letter of Credit transaction and were, thus, owned by BNP and not by Wajilam. Since this motion was filed, Plaintiff has sought document discovery and a deposition of BNP, seeking to uncover the remainder of the documents which were part of the transactions in question, as well as any debits and credits of Wajilam's accounts which in any way relate to these transactions. BNP has stonewalled Plaintiff's discovery efforts (without ever objecting to them as being in any way burdensome). In support of its motion, BNP has "handpicked" the documents from the transaction and has failed to include or produce those which evidence the

property interest Wajilam maintains in these transactions. As the accompanying declaration of Thomas L. Tisdale establishes, the Terms and Conditions to Wajilam's Application to BNP for Discount Financing clearly establish Wajilam's obligation to defend, indemnify and hold harmless Wajilam, and to reimburse Wajilam in the event BNP does not receive payment in full under these Letter of Credit transactions.

Thus, Wajilam has a property interest in these funds as they are conditionally negotiated Letter of Credit transactions and represent a debt owed by Wajilam to BNP. For the reasons that follow, BNP's motion to vacate the attachment and amend the ex parte order must be denied because Wajilam maintains a property interest in the entirety of the $410,591.08 under attachment.

## FACTS

The facts pertaining to the instant Motion to Vacate the process of maritime attachment and garnishment are more fully set forth in the accompanying attorney Declaration of Thomas L. Tisdale dated January 28, 2008 (hereinafter "Tisdale Decl.") The facts stated in the Declaration are incorporated by reference herein. In addition, this Memorandum of Law will make reference to, and discuss as necessary the facts set forth in the Declaration.

## ARGUMENT

### POINT I

### BURDEN OF PROOF

BSC does not dispute that it bears the burden of proof at a hearing pursuant to Supplemental Admiralty Rule E(4). However, according to the leading precedent from the United States Court of Appeals for the Second Circuit, its burden is easily carried with proof that its claim is *prima facie* valid; that it has validly obtained the order of maritime attachment and

garnishment; and that it has attached the defendant's property. *Aqua Stoli v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006). BNP's sole challenge to the validity of the maritime attachment in this case is that it, and not the Defendant Wajilam, owns the funds at issue. BNP's motion fails to demonstrate, however, that Wajilam does not have a property interest in the attached funds.

## POINT II

## WAJILAM HAS A COGNIZABLE PROPERTY INTEREST IN THE FUNDS ATTACHED

### A. Under Federal Maritime Law, Wajilam has a Property Interest in the Attached Funds

The Second Circuit's decisions in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434 (2d Cir. 2006) and *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002) are controlling and make clear that Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims has broad application to all types of property interests, including proceeds of a electronic funds transfer (hereinafter "EFT").

Specifically, Rule B authorizes the attachment of a defendant's property, "tangible or intangible." As noted in *Winter Storm*, "[i]t is difficult to imagine words more broadly inclusive than 'tangible or intangible.' What manner of thing can be neither tangible nor intangible and yet still be 'property?'" *Winter Storm*, 310 F.3d at 276. Accordingly, even where the source of the funds is a debt owed to defendant, the funds are attachable property. *See, e.g., Id.* at 267. Further, "Rule B is intended to impact any property in which the defendant has a legal interest. Nothing in the language of Rule B requires that the property attached be the exclusive property of the defendant." *See HBC Hamburg Bulk Carriers & Co. KG v. Proteinas y Oleicos S.A. de C.V.*, No. 04 Civ. 6884, 2005 WL 1036127, *4 (S.D.N.Y. May 4, 2004). Thus, it follows that

even where the defendant has only a partial interest and that interest is a debt, such as with a conditional letter of credit, that interest makes the subject funds attachable pursuant to Rule B.

Here, despite BNP's contentions to the contrary, it is abundantly clear that Wajilam retained a property interest in the funds attached by BSC at Wachovia because BNP's purchase of the credit proceeds being paid to Wajilam was conditional. *Declaration of Alvin Ong*, Exh. "1," p. 8 ("Ong Decl."). BNP's rights to the credit proceeds were, according to the BNP Credit Advice, "subject to final payment" to BNP. *Id.* Failing "final payment" (as occurred in this case due to the attachment at Wachovia), BNP maintained a right of recourse against Wajilam for reimbursement of the discount payment it made to Wajilam. Likewise, either Wajilam has, in fact, already reimbursed BNP because BNP has not been paid by the Issuing Bank, or Wajilam remains indebted to BNP until final payment is made to BNP. *Id.* Thus, the funds held by Wachovia Bank pursuant to BSC's attachment are funds in which Wajilam clearly retained a legal property interest at the time of the attachment, and every day since. (If it is to be alleged that Wajilam's "property interest" did not arise until after the property was attached and its obligation to reimburse arose, then the attachment is still valid since a "contingent" interest in the property is sufficient. *See, e.g Greenwich Marine v. S.S. Alexandra,* 339 F.2d 901 (2d Cir. 1965). Moreover, since the bank holding the funds, Wachovia, has been served daily even after the attachment of the subject funds, the date Wajilam's account was debited, their property interest in the attached funds matured and, at that time, they were effectively attached by this subsequent service. *See Winter Storm, supra.*

In short, the attached funds represent a debt owed by Wajilam to BNP because, at the time of attachment, BNP retained the right of recourse against Wajilam for non-payment. Thus, upon non-payment by the Issuing Bank, BNP maintained a right of recourse against Wajilam.

Accordingly, until BNP received the payment from the Issuing Bank, Wajilam and not BNP was exposed to the risk of non-payment.

Perhaps the most telling evidence produced which establishes that Wajilam retained a property interest in the attached funds is the BNP "Credit Advice." *See, e.g., Ong Decl.*, Exh. "1," p. 8. The Credit Advice states that BNP "purchased this bill *subject to final payment.*" *Id.* The "subject to final payment" language made BNP's purchase of the debt owed by the Issuing Bank to Wajilam conditional. It follows, therefore, that the attached funds represent a debt owed by Wajilam to BNP that Wajilam had conditionally negotiated, *i.e. "subject to final payment,"* to BNP, but in which it retained property rights until such time as the funds were received by BNP for "final payment."

This, combined with the Terms and Conditions attached to Wajilam's "application for discount financing," *Tisdale Aff., Exh. "1,"* confirms Wajilam's property interest in the attached funds. Wajilam remained the party solely at risk with regard to the Issuing Bank's payment of Wajilam's invoice. For example, relevant portions of the Terms and Conditions provide:

3.     We hereby irrevocably and unconditionally undertake and agree to indemnify you your successors and assigns in full and at all times to keep you fully and completely indemnified from and against all liability claims demands actions proceedings losses and expenses whatsoever including but not limited to legal costs as between solicitor and own client and all other liabilities of whatsoever nature and description which may be made or taken or incurred or suffered by you in relation to the bill of exchange and other documents enclosed with this application including but not limited to those liabilities relating to or arising from any and all discrepancies that may exist between the documents as called for in the terms of the Letter of Credit and the documents enclosed with this application.

   . . .

7.     We agree that the bill of exchanges and accompanying documents shall continue to be at our risk and responsibility upon presentation to you and when forwarded by you for realization by your collection agents at

destination subject to all government regulations, restrictions and taxes and other dues both at Singapore as well as the place of destination of the shipment and the bill of exchange and/or documents; and we hold ourselves fully responsible to you and to your agent for the due compliance with each requirement, regulation, order or restriction, of any government department or of any competent naval or military authority made given or imposed in connection with the shipment of the merchandise or with the bill of exchange and/or documents or its negotiation and collection. All charges, costs and expenses relative to all matters herein are chargeable to and payable by us, if not paid or not fully paid by drawee.

8.    We agree to pay you immediately after you receive notice (whether in writing or otherwise) of non-acceptance and/or non-payment the amount of the bill of exchange and/or documents together with interest, at your prescribed rate and all other charges and expenses. We also irrevocably authorize you at your sole discretion to debit our account with the currency of Singapore dollar equivalent of the bill of exchange and/or document(s) at your prevailing selling rate together with interest, at your prescribed rate and all other charges and expenses.

. . . .

10.    Without prejudice to any of your rights under law or agreement or otherwise, you shall be entitled to set-off any of our liabilities against credit balances in any bank account held in our name by you or any of your branches, agents, successors and/or assigns and we hereby undertake, on demand, to increase the amount standing to the credit of any such account as may be required.

11.    Your holding additional security and/or the receipt of goods and/or documents by you shall not prejudice your rights on any bill of exchange and/or documents in case of dishonor nor shall any recourse or proceedings taken thereon or your granting time or other indulgence whatsoever to or making any composition or arrangements with any parties to such bill of exchange and/or documents prejudice or affect your title to such security or our liability, and it is also agreed that your rights against us shall not be prejudiced owing to any such bills of exchange and/or documents not having been noted and/or protested in the event of dishonor by non-acceptance and/or non payment.

*Tisdale Aff., Exh. "1."*

6

Recognizing the foregoing principals, Judge Cote in *Noble Shipping, Inc. v. Euro-Maritime Chartering, Ltd.*, 2003 U.S. Dist. LEXIS 23008, No. 03 Civ. 6039, 2003 WL 23021974 (S.D.N.Y. Dec. 24, 2003) held that "[u]nder Rule B, a debt transferred pursuant to an EFT may be attached as the property of the debt's intended beneficiary." *Noble Shipping*, 2003 U.S. Dist. LEXIS 23008 at *9-*10. Likewise, in *HBC Hamburg Bulk Carriers GmbH & Co. KG v. Proteinas Y Oleicos S.A. de C.V.*, 2005 U.S. Dist. LEXIS 8009 (S.D.N.Y. 2005), Judge Buchwald followed *Winter Storm* and *Noble Shipping* and rejected the defendant's argument that "the EFTs attached by Citibank were not its "property" at the time of attachment." *Id.* at *9-*10. As in this case, in *HBC Hamburg*, the "EFTs in question had been sent by third parties as payments to [the defendant] with their ultimate destination being one of [defendant's] Mexican Banks." *Id.* at *10. In rejecting the defendant's "property" argument, Judge Buchwald held as follows:

> The issue is whether, for purposes of Rule B attachment, an EFT remains the exclusive property of the sending-payor until it enters one of the banks associated with the recipient-beneficiary. We hold that it does not. Rule B permits a plaintiff "to attach intangible items, such as debts owed to the defendant. Such items may be attached even if they have not yet matured or have only partially matured." *Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 276 (2d Cir. 2002)* (quoting Jarvis, supra, at 530). The only limitation on such attachment is that "the defendant's entitlement to the credit or interest in the debt must be clear." Id. Because Proteinas has a clear property interest in the debt owed to it, and because the EFT in the hands of the intermediary bank is intended to satisfy that debt, Proteinas has a property interest in the EFT before it is technically possessed by its bank. In so holding, we adopt the reasoning of Judge Cote in *Noble Shipping, Inc. v. Euro-Maritime Chartering, Ltd.*, 2003 U.S. Dist. LEXIS 23008, No. 03 Civ. 6039, 2003 WL 23021974 (S.D.N.Y. Dec. 24, 2003).

*HBC Hamburg*, 2005 U.S. Dist. LEXIS 8009 at *10-*12.

Despite all of the foregoing, BNP's counsel leads this Court to believe that it is now a foregone conclusion that Letter of Credit transactions such as those attached in this action are

unattachable. BNP's counsel bases this assertion on a single reported district court case and several distinguishable and inapplicable state court cases.

In *Prime Shipping v. Wajilam Exports (S) Pte. Ltd.*, No. 06 CV 1183 (JSR), Judge Rakoff granted the movant bank's motion to vacate finding that "ordinary letters of credit" were not attachable assets as they were not the property of the defendant. *See Id.* Plaintiff respectfully posits that this conclusion may well be proper where the letter of credit is not conditional or where all of the conditions stipulated to have already been met. Such is not the case here. The letters of credit purchased by BNP from Wajilam that were attached herein are clearly conditional and "subject to final payment" which, at the time of the attachment, had not yet been received. Thus, there can be no doubt that Wajilam still retains a property interest in these funds. Furthermore, the instant motion must be considered in light of the Second Circuit's decision in *Aqua Stoli,* which was decided after Judge Rakoff's decision in *Prime,* and reaffirmed the breadth and scope of Rule B in the face of many district court decisions attempting to narrow the rule.

In contrast to the cases upon which BNP relies, Judge Stein issued a decision in *Aifos Trade SA v. Midgulf Int'l Ltd.*, 06 Civ. 203[1] (SHS)(S.D.N.Y. May 2, 2006) denying a motion to vacate a maritime attachment of letter of credit proceeds under circumstances almost identical to those in this case. In *Aifos*, Judge Stein rejected the defendant's argument that the funds under attachment had been "irrevocably assigned to a third party, the Jordan Investment and Finance Bank," which essentially mirrors the arguments that BNP makes in this case. *Id.* at 1. In upholding the attachment Judge Stein found that:

> evidence provided to the Court shows that at the time of the attachment Midgulf retained at least some legal interest in the attached funds, and that is all that is required by Rule B . . . ." *See HBC Hamburg Bulk Carriers & Co. KG v.*

---

[1]     Annexed to Tisdale Aff. as Exhibit "2."

*Proteinas y Oleicos S.A. de C.V.*, No. 04 Civ. 6884, 2005 WL 1036127, *4 (S.D.N.Y. May 4, 2004) ("Rule B is intended to impact any property in which the defendant has a legal interest. Nothing in the language of Rule B requires that the property attached be the exclusive property of the defendant"). The Court notes that (a) the source of the funds was a debt owed to defendant, which the law recognizes as attachable property, *see, e.g., Winter Storm Shipping Ltd. v. TPI*, 310 F.3d 263, 267 (2d Cir. 2002).

*Aifos,* 06 Civ. 203 at 1-2. The facts in this case are generally the same. Accordingly, because Wajilam has a legal interest in the attached funds held by Wachovia, the motion to vacate the attachment should be denied as BNP has asserted no other colorable basis upon which the attachment could be vacated.

The discovery which BNP has stonewalled would have established not only the Terms and Conditions for the Wajilam application for these transactions, but would likely also show that Wajilam has already reimbursed BNP in some way and that the attached funds in this case are, in fact, the property of Wajilam (which would also explain the extensive delay between the date the Letter of Credit transactions were attached and the date the within motion was made).

This discovery should be allowed to proceed so that Rule B defendants can no longer attempt to hide behind Letter of Credit transactions in an attempt to evade Rule B. It is of note that BNP's counsel points to United States Magistrate Judge Katz's report and recommendation to The Honorable Judge Kaplan in *Allied Marine Services Ltd. v. LMJ International Ltd.,* 06 Civ. 3641, October 23, 2007, in support of his position that the funds belong solely to BNP. *Tisdale Aff. Exh. 3.* However, as to one of the attachments, Magistrate Katz only recommended the vacateur of the attachment as he was not certain that the defendant retained any interest in the EFT. Specifically, Magistrate Katz stated that

> the failure on the part of BOB to provide any of the documents controlling the legal relationships between the parties is troublesome. The Court is left to speculate about the nature of the financial instruments involved and, unlike other financial transactions in question, is unable to review the

> language of the controlling documents themselves. In particular, it is not
> possible to determine whether LMJ retained any interest in the EFT from
> Veneto Banca to BOB.

*Id.* at 22. It is of note that Magistrate Katz's report is not a decision of the District Court. Judge

Kaplan never ruled on this recommendation as the parties entered into a settlement agreement

amongst themselves and dismissed the action.

### B.    New York State Law is Inapplicable

The arguments raised by BNP about the purported sanctity of Letter of Credit

transactions are nearly identical to those raised in earlier cases about the importance of EFT's to

modern commerce. All of these arguments were considered and rejected by the Second Circuit

Court of Appeals in Winter Storm. *See Winter Storm, supra.*

"Maritime attachment is a feature of admiralty jurisprudence that antedates both the

congressional grant of admiralty jurisdiction to the federal district courts and the promulgation of

the first Supreme Court Admiralty Rules in 1844." *Winter Storm, supra,* at 267-8; *quoting*

*Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.,* 85 F.3d 44, 47 (2d Cir. 1996). "It is

also self-evident that the maritime attachment is not merely well established in admiralty, but

that it is a unique, characteristic feature of that branch of our law. *Aurora,* 85 F.3d at 48; *quoting*

*Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottacchi S.A. de Navegacion,* 732 F.2d 1543,

1549 (11th Cir. 1984)(stating that the lineage of admiralty rules "sets them apart from common

law based sequestration, garnishment and attachment laws); *See also* Grant Gilmore & Charles

L. Black, Jr., *The Law of Admiralty,* § 1-12, at 36 (2d ed. 1975)("The maritime lien differs from

others in that it is (at least as far as ships are concerned) entirely independent of possession, is

non-consensual, and is commonly said not to be extinguished by transfer to a bona fide purchaser

without notice of its existence.")(footnotes omitted).    In its motion to vacate, BNP relies heavily

on state law in its attempt to persuade this Court that the funds should be released. As Rule B is a unique remedy not available at the state level, the more narrow state law definition of property should not be forced onto Rule B such that it improperly constricts the broad and sweeping nature of the rule – which is allowable and appropriate only in federal maritime law.

### C.    Even under New York State Law, Wajilam has a property interest in the funds attached

Even under the more narrowly defined New York state law, property interests that are subject to attachment include debts and are defined as "[a]ny debt or property against which a money judgment may be enforced as provided in section 5201." NY CPLR § 6202 (McKinney 2001) (hereinafter "CPLR 6202"). CPLR 5201(a) and (b) elaborate further, distinguishing generally between "debt" and "property":

> (a) Debt against which a money judgment may be enforced. A money judgment may be enforced against any debt, which is past due or which is yet to become due, certainly or upon demand of the judgment debtor, whether it was incurred within or without the state, to or from a resident or nonresident, unless it is exempt from application to the satisfaction of the judgment. A debt may consist of a cause of action which could be assigned or transferred accruing within or without the state.

> (b) Property against which a money judgment may be enforced. A money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment.

N.Y. Civ. Prac. L.& R. § 5201(a), (b) (McKinney 2001) (hereinafter "CPLR 5201").

In *Noble Shipping, Inc. v. Euro-Maritime Chartering, Ltd.*, 2003 U.S. Dist. LEXIS 23008, No. 03 Civ. 6039, 2003 WL 23021974 (S.D.N.Y. Dec. 24, 2003), Judge Cote held that,

> Debts owed to a creditor are indisputably property subject to attachment. See, e.g., N.Y. C.P.L.R. 5201, 6214 (McKinney 2003). In maritime actions, it is no different. Rule B permits "a plaintiff to attach intangible items, such as debts owed to the defendant. Such items may be attached even if they have not yet matured or have only partially matured." *Winter Storm*, 310 F.3d at 276 (*citing*

Robert M. Jarvis, An Introduction to Maritime Attachment Practice Under Rule B, 20 *J. Mar. L. & Com.* 521, 530 (Oct. 1989)).

*Noble Shipping.*, 2003 U.S. Dist. LEXIS 23008 at *7.

While not as sweeping as the Second Circuit's definition of property for the purposes of Rule B, New York courts have interpreted CPLR 5201 to apply to a wide variety of intangible property interests. In the seminal case of *ABKCO Ind. v. Apple Films, Inc.*, 39 N.Y.2d 670, 50 N.E.2d 899, 385 N.Y.S.2d 511 (1976), the New York Court of Appeals, in considering the validity of an attachment of contractual agent to receive funds from a licensing agent, looked to the economic significance of the interest, reasoning that "[w]hile the fact of value or lack of it has no legal effect on the validity of the attachment, it obviously will have real economic value." *ABCKO*, 39 N.Y.2d. at 675-76, 50 N.E.2d at 902, 385 N.Y.S.2d at 514. Though the defendant argued that its contracted rights did not constitute attachable debt under subsection (a), the court nevertheless held that the contract right constituted intangible property because it was assignable. *ABCKO*, 39 N.Y.2d. at 676, 50 N.E.2d at 902, 385 N.Y.S.2d at 514. See also *In re Bd. of Dir. of Hopewell Int'l. Ins. Ltd.*, 238 B.R 25, 47 (Bankr. S.D.N.Y 1999) (*citing ABKCO*, "[u]nder New York law, the bundle of rights created by a contract or agreement is an intangible personal property interest).

Essentially, "[t]he court said that the right that [defendant] had against [its NY counterpart] could be treated as *either* a 'debt' under CPLR 5201(a) *or* as 'property' under 5201(b), and held that the levy would be allowed if it passed under either." Siegel, *New York Practice* § 489 at 751 (3d ed. 1999). The *ABKCO* court emphasized a pragmatic approach to defining an attachable property interest. Under Professor Siegel's view, the *ABCKO* court

12

correctly eschewed a purely technical approach (such as the one BNP urges in this case) by

looking at the economic significance of the interest at stake:

> Avoiding arbitrary distinctions, Abkco takes a pragmatic approach that gives the
> economic potential of the asset the upper hand. If from the judgment creditor's
> point of view the asset is worth pursuing as a matter of economics, Abkco
> authorizes the pursuit notwithstanding the contingent nature of the asset, and even
> though nothing may come of the chase.

*McKinney's Cons. Laws of N.Y.,* Book 7B, CPLR 5201.5 at 54. Professor Siegel concludes that

by virtue of the *ABCKO* decision, "as long as a New York situs can be spelled out for the

intangible at issue, it can be given 'property' treatment under CPLR 5201(b) and subjected to

levy." Siegel, *New York Practice* § 489 at 794-95 (3d ed. 1999). In interpreting the expansive

scope of the *ABKCO* decision, New York courts frequently rely on Professor Siegel's

commentary as reliable and persuasive. *See Digitrex, Inc. v. J. Howard Johnson,* 491 F. Supp.

66, 68-69 (S.D.N.Y. 1980); *Trojan Hardware Co. v. Bonacquisti Constr. Corp.,* 141 A.D.2d 278,

282, 534 N.Y.S.2d 789, 791 (N.Y. App. Div. 1998); *Niagara Mohawk Power Corp. v. Young,*

135 A.D.2d 1139, 523 N.Y.S.2d 275, 277 (N.Y. App. Div. 1987); *Supreme Merchandise Co. v.*

*Chemical Bank,* 117 A.D.2d 424, 429-430 503 N.Y.S.2d 9, 12 (N.Y. App. Div. 1986); *Kates v.*

*Marine Midland Bank, N. A.,* 143 Misc.2d 721, 723, 541 N.Y.S.2d 925, 928 (Sup. Ct. Monroe

Co. 1989); and *Streever v. Mazzone,* 97 Misc.2d 465, 471, 411 N.Y.S.2d 843, 848 (Sup. Ct.

Saratoga Co. 1978).

There is no dispute in this case that under both Federal and state law, the Southern

District of New York is the situs of the attached "intangible." Moreover, the attached funds held

by Wachovia are of obvious economic significance to Wajilam at the time of the attachment

since the funds represented payment of a debt to Wajilam still owed to BNP and also would have

13

extinguished Wajilam's indebtedness to BNP had the funds been remitted to BNP for "final payment."

Accordingly, under federal maritime law as set out in *Winter Storm*, and under New York state law as enumerated in *ABCKO*, the funds held by Wachovia constitute attachable property of Wajilam. Applying the *ABCKO* decision to the facts of this case leads to the conclusion that under New York law the funds held by Wachovia whether at the time it received the wire transfer payment order, or after it segregated the funds, clearly are within the gamut of CPLR 5201 attachable property interests. The wire transfer and the proceeds thereof in Wachovia's possession were economically significant to Wajilam at the time of the attachment. See *ABKCO*, 39 N.Y.2d. at 675-76, 50 N.E.2d at 902, 385 N.Y.S.2d at 514 (interest is attachable even though real economic significance of interest "may not come into sharp focus until execution on the judgment, if any, in the action for which the attachment provides jurisdiction").

The New York state cases upon which BNP relies are inapposite. Neither *First Commercial Bank v. Gotham Originals, Inc.*, 64 N.Y.2d 287 (1985) nor *Supreme Merchandise Co. v. Chemical Bank*, 70 N.Y.2d 344 (1987) dealt with questions of ownership of funds attached in the hands of an intermediary bank, such as in this case. *First Commercial* involved an attachment of a letter of credit in the hands of an issuing bank before initiation of the payment. At first glance, *First Commercial* seems analogous to the instant case. Upon further consideration, however, it becomes clear *First Commercial* is inapposite to the instant action as it did not involve a conditional credit purchase as in this case. Moreover, the court made no determination as to parties with a property interest in the proceeds of the letter of credit after initiation of payment by the issuing bank. Likewise, *Supreme Merchandise,* which followed *First Commercial*, did not discuss all the possible property interests in letter of credit proceeds

14

attached in the hands of an intermediary bank. As such, to the limited extent that these New

York state court cases should inform this Court's decision, these cases are easily distinguishable

from the instant matter.

## POINT III

## AT ALL TIMES, BSC ACTED IN GOOD FAITH AND, AS SUCH, THE AWARD OF ATTORNEYS FEES AND EXPENSES IS INAPPROPRIATE

BNP alleges in its memorandum of law that the Plaintiff acted in bad faith when it

restrained Wajilam's funds at Wachovia bank. To establish bad faith, BNP must show that the

legal basis of the conduct complained of was patently without merit *and* that the conduct was

engaged in for an improper purpose, such as harassment of the prevailing party. *Dow Chemical*

*Pac., Ltd. v. Rascator Mar. S.A.,* 782 F.2d 329 (2d Cir. 1986); *Sierra Club v. United States Army*

*Corps of Engineers,* 776 F.2d 383 (2d Cir. 1985); *Dolco Investment, Ltd. v. Moonriver*

*Development Ltd., et al.,* 2007 WL 4320751 (SDNY Dec. 2007).

Neither test is met in this case. As stated more fully above and according to Judge

Haight's now landmark decision in *Winter Storm*, it is now axiomatic that property is very

broadly defined under Rule B. *See Winter Storm, supra,* p. 276 stating that Rule B(1) provides

that a maritime plaintiff may attach the defendant[s] "tangible or intangible personal property"

and that "it is difficult to imagine words more broadly inclusive than "tangible or intangible." *Id.*

Moreover, Rules B(1) and B(3) permit the attachment of "a variety of intangible property, such

as bank accounts, accounts receivable, and other debts owed to the defendant." *See 29-0705*

*Moore's Federal Practice- Civil § 705.04.* It is clear that a party may attach the funds used to

pay a debt that is owed or *will be owed* to a defendant and the court may require such person to

pay the debt to the attaching party upon maturity. *See Iran Express Lines v. Sumatrop, A.G.,* 563

F.2d 648 (4th Cir. 1977). As the attached funds represent a debt owed by the Issuing Bank to

Wajilam that Wajilam had conditionally negotiated, *i.e. "subject to final payment,"* to BNP, these funds fall within the wide expanse of attachable property under Rule B.

Second, the Plaintiff engaged in no improper purpose by attaching Wajilam's funds or by releasing the first three EFTs caught pursuant to the ex parte order in this action. Plaintiff does not dispute that it released the first three attachments of EFTs made. However, these funds were not released because Plaintiff reviewed the documents provided and determined that the funds were unattachable. *Tisdale Decl.* ¶ 11. Instead, shortly after the funds were attached, BNP's counsel contacted the Plaintiff's Counsel and stated that if the funds were not released immediately, costly motion practice would ensue. *Tisdale Decl.* ¶ 8. The undersigned then contacted BNP's counsel and Wajilam retained a cognizable property interest in these funds pursuant to the Second Circuit's expansive definition of property. *Tisdale Decl.* ¶ 9. After due consideration, research and consultation with our clients, we agreed to release the $19,338.84 and $40,141.56 as such a small amount of security was not worth engaging in motion practice to keep. *Tisdale Decl.* ¶ 10. These funds were released only for the foregoing reason. At no time did Plaintiff consider that these or similar funds were outside the scope of the Ex Parte Order. *Tisdale Decl.* ¶ 11.

For all of the foregoing reasons, Plaintiff has not acted in bad faith and BNP has not met its burden of demonstrating same. As such, the award of attorneys' fees and expenses is wholly inappropriate.

## CONCLUSION

For all the foregoing reasons, BNP Paribas of Singapore's Motion to Vacate Maritime

Attachment and amend the ex parte order should be denied.

Dated: January 28, 2007
     New York, NY

          The Plaintiff,
          BELARUSSIAN SHIPPING COMPANY,


By: _____
          Lauren C. Davies (LD 1980)
          Thomas L. Tisdale (TT 5263)
          TISDALE LAW OFFICES, LLC
          11 West 42nd Street, Suite 900
          New York, NY 10036
          (212) 354-0025 – phone
          (212) 869-0067 – fax
          ldavies@tisdale-law.com
          ttisdale@tisdale-law.com

## AFFIRMATION OF SERVICE

Lauren C. Davies, an attorney duly admitted to practice before this Honorable Court,

affirms that on this 28th day of January, I served a copy of the forgoing via email upon the

following:

fmcnamara@cardillocorbett.com
Francis H. McNamara, Esq.
Cardillo & Corbett
29 Broadway, Suite 1710
New York, NY 10006

_____
Lauren C. Davies