# EXHIBIT 2

```
                                              USDC SDNY
                                              DOCUMENT
                                              ELECTRONICALLY FILED
                                              DOC #: _____
                                              DATE FILED: 5/2/06
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
AIFOS TRADE SA,                              :      06 Civ. 203 (SHS)
                                             :
                        Plaintiff,           :      ORDER
                                             :
        -against-                            :
                                             :
MIDGULF INTERNATIONAL LTD.,                  :
                                             :
                        Defendant.           :
------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

Having reviewed the submissions of the parties, including the April 21, 2006 letter from defendant, and hearing oral argument on April 21, IT IS HEREBY ORDERED THAT:

1. Midgulf International Ltd.'s motion to vacate the attachment of its funds held by the Bank of New York and to dismiss this action is denied. Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims places the burden of justifying the order of maritime attachment on plaintiff Aifos Trade SA. Aifos Trade has met this burden, as it has established that it has an in personam claim against Midgulf that is cognizable in admiralty, Midgulf cannot be found in the Southern District of New York, property of Midgulf can be found here and there is no statutory or general maritime law prohibition to the attachment. See Tramp Oil & Marine Ltd. v. Ocean Navigation (Hellas), No. 03 Civ. 5265, 2004 WL 1040701, *1 (S.D.N.Y. May 7, 2004), citing 2 Thomas J. Schoenbaum, Admiralty and Maritime Law § 21-2, at 470 (2d ed. 1994). Midgulf asserts that the property attached was not its own because those funds had been irrevocably assigned to a third party, the Jordan Investment and Finance Bank ("JIFB"). However, the evidence provided to the Court shows that at the time of the attachment,

1

al., Nos. 00 Civ. 5789, 00Civ. 6352, 01 Civ. 0013, 2001 WL 930837 (S.D.N.Y. Aug. 15, 2001), is inapposite because the district court ruled on the question of forum non conveniens in that case not on an expedited motion to vacate the attachment, as is the state of affairs here, but rather on the basis of motions to dismiss and for summary judgment.

Finally, Midgulf urges that Aifos Trade has failed to show that the attachment is necessary. Case law in this district is not settled as to whether plaintiffs must make a showing of need in order to maintain an attachment. Compare Blake Maritime, Inc. v. Petrom S.A., No. 05 Civ. 8033, 2005 WL 2875335, *2 (S.D.N.Y. Oct. 31, 2005) ("On its face, [Rule B] does not mandate a showing of need or necessity in order for plaintiff to obtain security.... There is no mention of a showing of necessity or fairness at all.") with Seaplus Line Co. Ltd. v. Bulkhandling Handymax AS, 409 F. Supp. 2d 316, 323 (S.D.N.Y. 2005) (holding that plaintiff "bears the burden of demonstrating, by a preponderance of the evidence, that the attachment is necessary to effectuate one of the two purposes of Supplemental Rule B": obtaining jurisdiction or securing a judgment).

Here, the Court does not need to decide which line of authority to follow because Aifos Trade has established by a preponderance of the evidence that the attachment is necessary to provide security for a possible judgment in the underlying dispute. Midgulf has no United States office, has no identified assets in the United States and has not offered to post substitute security. Cf. Allied Maritime, Inc. v. The Rice Corporation, No. 04 Civ. 7029, 2004 WL 2284389, *2 (S.D.N.Y. Oct. 12, 2004) (vacating order of attachment because defendant was "one of the largest rice trading companies in the world, with more than $575,000,000 in sales in 2003"; had maintained offices in the district for more than ten years; had "more than enough" assets in the

district itself to satisfy plaintiff's claim; and plaintiff had refused to accept, without justification, defendant's offer of substitute security). Midgulf's only evidence supporting its ability to pay a judgment is a declaration from its chief financial officer that the company "for the last two years has had revenues in excess of 65 million U.S. dollars per year" (Farraj Decl. ¶ 14) – a number that, by itself, does not provide adequate information since the Court does not know such information as the company's total U.S. assets or its overall debt.

2.  Aifos Trade shall post countersecurity in the amount of $51,000. The Court possesses broad discretion in deciding whether to order countersecurity. See Result Shipping Co. Ltd. v. Ferruzzi Trading, 56 F.3d 394, 399 (2d Cir. 1995); Dongbu Express Co., Ltd. v. Navios Corp., 944 F. Supp. 235, 239 (S.D.N.Y. 1996). In exercising this discretion, the Court is guided by two principles: (1) the purpose of countersecurity is to place the parties on an equal footing in regard to security and (2) the Court should avoid the imposition of burdensome costs on a plaintiff that might prevent it from bringing suit. See Result Shipping, 56 F.3d at 399; Dongbu Express, 944 F. Supp. at 239. Midgulf has requested that Aifos Trade post countersecurity of $120,905, an amount which includes $30,000 in arbitrators' fees and expenses and $50,000 in attorneys' fees and expenses – and which is nearly four times the size of the $34,212.58 counterclaim. Defendant's request is excessive because it appears to incorporate the expense of not only prosecuting its counterclaim, but also of defending against the original complaint, a purpose that is beyond the scope of Rule E(7)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims, which provides that countersecurity is to cover only the "damages demanded in the counterclaim." The Court finds that countersecurity in the amount of $51,000 is appropriate. That number includes the full amount of the counterclaim plus interest,

as well as attorneys' fees and arbitrators' costs of $10,000, which is a reasonable estimate of the cost of prosecuting the counterclaim. This amount will place the parties on equal footing in regard to security for their respective claims and should not deter plaintiffs in maritime actions from bringing suit.

Dated: New York, New York
       May 1, 2006

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.