UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
BELARUSSIAN SHIPPING CO.,          :

                      Plaintiff,          :          EFC CASE

          -against-               :          07 Civ. 3152 (GEL)

WAJILAM EXPORTS SINGAPORE          :
PRIVATE LIMITED a/k/a WAJILAM
EXPORTS PTE. LTD.,                 :

                    Defendant.  :
-------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR RELEASE OF FUNDS, AMENDMENT OF
ORDER AND AWARD OF ATTORNEYS FEES**

                                              CARDILLO & CORBETT
                                              Attorneys for BNP Paribas of Singapore
                                              29 Broadway
                                              New York, New York 10006
                                              Tel: 212-344-0464

FRANCIS H. McNAMARA
    of Counsel

## POINT I

### THE DEFENDANT HAS NO INTEREST WHATSOEVER IN THE ATTACHED FUNDS

The Plaintiff does not dispute that BNP purchased shipping documents and the rights to payment under letters of credit from the Defendant, nor does Plaintiff dispute that the Issuing Banks accepted the shipping documents from BNP and agreed to pay the proceeds of the letters of credit ("the Funds") to BNP. (See Ong. Dec., Exhs. 1-6). Plaintiff also does not dispute that the payments by the Issuing Banks attached pursuant to the Order were made to BNP, as beneficiary. Accordingly, the Funds are the property of BNP.

BNP believes that Plaintiff does not dispute that last statement either, but Plaintiff does maintain that Defendant nevertheless retained a "legal interest" in the Funds sufficient to support an attachment, arising from two factors:

1. the purchases by BNP from the Defendant were "subject to final payment [to BNP]"; and
2. BNP had a right of recourse against the Defendant if the payments by the Issuing Banks were not received by BNP.

Merely stating these objections reveals their irrelevance. The circumstance that an ultimate failure of payment of the Funds to BNP (which has not occurred) would permit BNP to unwind the original purchase transactions and would give rise to a corresponding liability by the Defendant to BNP, does not create any legal, or beneficial, or attachable property interest of the Defendant in the Funds. On the contrary, those factors reinforce the conclusion that BNP is the sole beneficiary of the Funds.

The same arguments Plaintiff's makes in this case were rejected in *Prime*

*Shipping Co. Ltd. V. Wajilam Export(s) Pte. Ltd.,* No. 06 Civ. 1183 (JSR), 2006 WL 1539330 (S.D.N.Y. June 2006), on the basis that rights and obligations between Issuing Banks and negotiating banks under letters of credit are independent of, *inter alia,* arrangements between the negotiating bank and its customer. BNP submits that the issue can also be addressed by demonstrating that the particular arrangements between BNP and the Defendant do not implicate a property interest of the Defendant in the Funds. In short, Plaintiff's arguments do not satisfy the test that "...the defendant's entitlement to the credit or interest in the debt must be clear." *Winter Storm Shipping Ltd. v. TPI,* 310 F.3d 263, 276 (2nd Cir. 2002).

None of the district court cases cited by the Plaintiff support its position. Only *Aifos Trade S.A. v. Mid-Gulf International Ltd.,* 06 Civ. 203 (SHS) (S.D.N.Y. May 2006) involved attachment of the proceeds of a letter of credit, but in *Aifos Trade* the payment was being made to the defendant itself, not, as here, to a third party.

The Plaintiff contends that federal maritime law, not New York law, governs the question of whether the Funds are the property of the Defendant in a Rule B attachment case. *Prime Shipping* is the only federal case dealing with the particular "property" issues raised here in a Rule B setting, and that case, which made reference to New York law, fully supports BNP's position. However, because there is only one district court decision directly on point, this Court may look to New York law, as Judge Rakoff did in *Prime Shipping.. Reibor Intern Ltd.* V. Cargo Carriers (*Kacz Co.*), 759 F.2d 262 (2nd Cir. 1985); *Winter Storm Shipping, Ltd. v. TPI,* 198 F. Supp. 2d 385 (S.D.N.Y. 2002), As the two New York Court of Appeal cases[1] cited in BNP's

---

[1] *First Commercial Bank v. Gotham Originals Inc.,* 64 N.Y. 2d 287 (1985); *Supreme Merchandise Co. v. Chemical Bank,* 70 N.Y. 2d 344 (1987).

2

main brief and in the *Prime Shipping* decision and in *All Service Exportacao v. Banco Bamerindus,* 921 F. 2d 32 (2nd Cir. 1990) make clear, once the Issuing Bank has accepted the documents and the payment instructions from the negotiating bank, the letter of credit proceeds are owed exclusively to the negotiating bank and the rights of the original beneficiary of the letter of credit (in this case, the Defendant) are extinguished.

Plaintiff mistakenly maintains that the "seminal" New York case is *ABKCO Ind. V. Apple Films, Inc.,* 39 N.Y. 2d 670 (1976). In *ABKCO,* the issue was whether the defendant's right to receive future royalties, which might or might not accrue, was a present interest sufficient to support an attachment under New York law. Obviously, therefore, that case has no relevance here, where the property has present substance, but the Defendant has no interest in it. Moreover, Plaintiff has failed to inform the Court that in *Supreme Merchandise* the Court of Appeal (after a thorough discussion at pp. 349-353 of the commercial importance of letters of credit and the need for certainty of payment, especially where the interests of third parties such as negotiating banks are involved), held that contingent interests in letters of credit are not subject to attachment under New York law.

**POINT II**

**PLAINTIFF'S REFUSAL TO RELEASE THE
FUNDS CONSTITUTES BAD FAITH**

In paragraphs 8-11 of the affidavit of Thomas L. Tisdale, Esq., dated January 28, 2008 ("Tisdale Aff.") and on page 16 of its Memorandum of Law ("MOL"), Plaintiff attempts to explain away its agreement to release the first three attachments of payments by Issuing Banks to negotiating banks, which totaled $93,594.32, by arguing that the attachments were legally valid,

but the amounts were too small to justify the "costly motion practice" allegedly threatened by the undersigned. (See Tisdale Aff. ¶8. And MOL, p. 16). The facts and the case law presented by BNP, as well as Plaintiff's reliance on strikingly inapposite cases, plainly demonstrate that attachments of such payments, where the negotiating bank is not the defendant, are transparently legally invalid.

Plaintiff also says that $96,594.32 was not worth the "costly motion practice" allegedly threatened by BNP's counsel, as the sole explanation for conduct which otherwise constitutes an admission that Plaintiff believed that there was no legal basis for the three attachments. Besides being unfortunate, the statement in the Tisdale Aff. ¶ 8 that the undersigned threatened "costly motion practice" is untrue, as shown in the accompanying reply declaration of Francis H. McNamara, dated February 1, 2008 ("McNamara Dec.")

None of the few email communications from the undersigned to Lauren Davies, Esq., Plaintiff's counsel, mentioned litigation or its costs, and all telephone communications were with Ms. Davies, not Mr. Tisdale. The first email of April 24, 2007 (McNamara Dec., Exhibit 1) was sent before any attachment had occurred and in the belief that the Court had not yet signed the Order. The hope was that the serious disruptions from repetitive mistaken attachments of negotiation credits could be avoided through amendment of the proposed order. Otherwise, such attachments would have to be unwound through time consuming cooperation between counsel, as had to be done for about eight attachments in the *Prime Shipping* case, which occurred after Judge Rakoff's decision of May 31, 2006. The statement in McNamara Dec., Exhibit 1 that "Patrick and I have been through this drill before.", referred to that cooperation between Patrick Lennon, Esq. (at that time a partner in Plaintiff's counsel's firm)

and the undersigned. Unfortunately, Plaintiff would not agree to an amendment of the Order.

When the first attachment happened in this case in June the undersigned emailed the credit negotiation transaction documents to Ms. Davies (McNamara Dec., Exhibit 2) and asked whether her client would agree to release the funds. Happily, Plaintiff did agree, and that same informed spirit led to the voluntary release of the next two attachments in August and September. However, in mid-October Plaintiff refused to release three additional attachments, at which time the undersigned told Ms. Davies that litigation would be a waste of money for all concerned and an unnecessary burden on the Court.

In short, no litigation threat was made by BNP. Rather, Plaintiff has forced BNP to apply to this Court for relief.

### POINT III

### PLAINTIFF IS NOT ENTITLED TO DISCOVERY IN THIS CASE

In pages 1, 2 and 9 of its MOL Plaintiff argues that BNP is "stonewalling" Plaintiff's discovery demands. On the contrary, BNP's opposition is based on the fact that discovery is inappropriate in a Rule E (4) (f) proceeding, and completely unnecessary in this case.

Rule E.1 of this Court's Local Admiralty and Maritime Rules suggests that the "prompt" Rule E (4) (f) hearing be held within three court days. Clearly, discovery as of right is not intended to be a facet of a Rule E (4) (f) hearing.

BNP has thoroughly demonstrated through submission of all the relevant transaction documents and the sworn statement of its employee with personal knowledge, that

5

the Funds are exclusively its property. For its part, Plaintiff has not identified any possibility that discovery–by production of documents and a deposition of a BNP-would lead to any different conclusion. Instead, Plaintiff offers only the naked allegations that the transaction documents have been "handpicked" by BNP, and that BNP "...has failed to include or produce those [documents] which evidence the property interest Wajilam maintains in these transactions." (MOL, pp. 1 & 2)  That kind of inappropriate talk should not sway the Court.

In counsel's January 25, 2008 letter to the Court Plaintiff cites judge Keenan's decision in *Metal Transport Corp. v. Chase Manhattan Bank, et al.,* 1990 WL 55687 (S.D.N.Y. 1990) as authority that discovery is permitted in a Rule B attachment case. In *Metal Transport* the plaintiff sought discovery respecting a bank account in the name of the defendant, Chagents Inc., to which only Chagents employees had access. Chagents maintained that the funds in the account belonged entirely to third parties and objected to discovery. Judge Keenan ordered discovery for the following reasons:

> ...this Court cannot conclusively determine on the record before
> it that the attached funds are not Chagents'. As plaintiff observes,
> authorized employees of Chagents are empowered to withdraw
> funds from the account. This certainly militates in favor of plaintiff's
> suggestion that some of the funds in the account are Chagents'.
> More discovery is required to resolve this question.* 2

In the instant case these factors are absent, i.e., the record leaves no doubt that BNP is the exclusive owner of the Funds, and Plaintiff has offered nothing suggesting otherwise. Accordingly, the Court should exercise its discretion by refusing Plaintiff's discovery request.

## CONCLUSION

For the foregoing reasons, the Court should order that the Funds be released, and that the

Order be amended so that no property of BNP will be attached in the future, and that legal costs and expenses be granted to BNP.

Dated: February 1, 2008

Respectfully submitted,

Cardillo & Corbett
Attorneys for BNP Paribas Singapore
29 Broadway
New York, New York 10006
212-344-0464
212-797-1212 (fax)
cc@cardillocorbett.com
fmcnamara@cardillocorbett.com

By: _____
Francis H. McNamara